IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

1:22CV403.
J. COLE

| | |
|---|---|
| RYAN TENNEBAR | ) |
| Petitioner | ) |
| | ) |
| V | ) CASE NO.: 1:19-cr-00437, 1:17-CR-00176  M.J. BOWMAN |
| | ) CIVIL ACTION: To Be Assigned |
| UNITED STATES OF AMERICA | ) |

## HABEAS CORPUS MOTION BY PERSON IN BOP CUSTODY PURSUANT TO 28 U.S.C. § 2241

COMES NOW, the petitioner, RYAN TENNEBAR, (hereinafter "Tennebar" or "Petitioner") pro se' and in absentia with this **HABEAS CORPUS MOTION BY PERSON IN BOP CUSTODY PURSUANT TO 28 U.S.C. § 2241.** "A pro se complaint requires a liberal interpretation and is subject to 'less stringent standards than formal pleadings drafted by lawyers'. As such a pro se complaint will be dismissed only for failure to state a claim 'where it appears beyond doubt that the Plaintiff can prove to set of facts in support of a claim which would entitle him to relief.' 429 U.S. 97, 106."

## PRELIMINARY STATEMENT

1. Petitioner Ryan Tennebar comes to this honorable court today, pro se' and in absentia seeking habeas corpus whereas the United States Government and particular the United States Department of Probation and the Federal Bureau of Prisons have deprived him of "earned time credits" he earned while in BOP custody at FCI Milan during the eligible period for such credits.

2.  Defendant Tennebar is now on HOME CONFINEMENT over 2 years longer than
    rightfully sentenced to, after applying these "earned time credits" via the First Step Act of
    2018 as prescribed below.

3.  Defendant Tennebar now appears before this court asking that the court intercede on his
    behalf, within its scope of power, and direct the Bureau of Prisons and the United States
    Probation Office, to apply those credits and immediately release him from supervised
    release as prescribed by the unambiguous First Step Act of 2018 and further enforced in
    precedent through Dyer v. Fulgam (1:21-CV-299-CLC-CHS, Eastern District of
    Tennessee)

**BACKGROUND**

On October 18, 2017 the petitioner, Ryan Tennebar, was sentenced to 48 months in Federal

Prison in the custody of the Federal Bureau of Prisons ("BOP") to be immediately followed by a

three year period of supervised release. This sentence was the result of being found guilty (by

plea) to Obstruction of Justice in violation of 18 U.S.C. § 1512(C)(1) and (2). On January 23,

2020, in conjunction with the same conduct and ensuing case, Tennebar was sentenced to 56

months and 23 days in Federal Prison in the custody of the Federal Bureau of Prisons ("BOP")

immediately followed by a three year period of supervision, all to run concurrent with the

previous sentence. This sentence was the result of being found guilty (by plea) to Conspiracy to

Commit Wire Fraud in violation of 18 U.S.C. § 1349.

Immediately upon entering the Federal Bureau of Prisons Mr. Tennebar began participating in

"other productive activities" as defined by the First Step Act of 2018. Because he was a

non-violent, first time offender with a custody classification and PATTERN score of minimum or

low, he was and remains eligible for "earned time credits" as defined by the First Step Act of 2018 and described herein. The First Step Act of 2018 is unambiguous in it's language.

## VENUE

The statute at 28 U.S.C. § 2241 states that " a section 2241 petition on behalf of a sentenced prisoner attacks the manner in which a sentence is carried out or the prison authorities "determination of duration", and must be filed in the same district where the prisoner is incarcerated" Although Tennebar is out on home confinement he is still in the custody of the Bureau of Prisons under the designation RRM Cincinnati, therefore the Southern District of Ohio is the correct venue for this action.

## MR. TENNEBAR IS FREE TO PROCEED ON THE MERITS

"... the exhaustion requirements under the the Prison Litigation Reform Act 42 U.S.C. §1997 e(a) ("PRLA"), will not apply. The PLRA "only applies when [a] plaintiff is confined in a correctional facility when the lawsuit is commenced": therefore, Plaintiff's amended complaint is not subject to administrative exhaustion. Q.F. v. Daniel 768 F. Appx 935, 938 (11th Cir 2019) (citing Harris v. Garner, 216 F.3d 970, 974(11th Cir. 2000) ("it is confinement status at the time the lawsuit is "brought" ie filed, that matters")).

Mr. Tennebar, is, and has been on HOME CONFINEMENT since March 15, 2022 and not confined in a correctional facility, as such he is free to proceed on the merits.

**FIRST STEP ACT**

The FSA provides that eligible inmates earn FSA Time Credits toward prerelease custody or

early transfer to supervised release for successfully completing approved Evidence-Based

Recidivism Reduction (EBRR) Programs or Productive Activities (PAs) assigned to each inmate

based on the inmate's risk and needs assessment. Inmates eligible to apply Time Credits under

the FSA include individuals sentenced under the U.S. Code. As required by the FSA, an inmate

cannot earn FSA Time Credits if that inmate is serving a sentence for a disqualifying offense or

has a disqualifying prior conviction. However, such inmates may still earn other benefits for

successfully completing recidivism reduction programming, such as increased privileges

(commissary, visiting, and telephone) for participation in EBRR Programs or PAs, as authorized

by the Bureau.

The FSA provides that an eligible inmate in Bureau custody who successfully participates in

EBRR Programs or PAs recommended based on the inmate's risk and needs assessment will

earn FSA Time Credits, to be applied toward prerelease custody ( *i.e.,* transfer to a Residential

Reentry Center (RRC) or home confinement for service of a portion of the inmate's sentence) or

transfer to supervised release ( *i.e.,* early satisfaction of the inmate's term of imprisonment)

under 18 U.S.C. 3624(g).


The FSA provides that "[a] prisoner shall earn 10 days of time credits for every 30 days of

successful participation in evidence-based recidivism reduction programming or productive

activities." 18 U.S.C. 3632(d)(4)(A)(i). An inmate determined to be at a "minimum or low risk for

3

recidivating" who, "over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." <u>18 U.S.C. 3632(d)(4)(A)(ii)</u>. The statute does not expressly define what constitutes a "day" of successful participation. In the proposed rule, the Bureau defined it as "one eight-hour period of participation in an EBRR Program or PA that an eligible inmate successfully completes." On January 19, 2022 The Bureau of Prisons outlined their interpretation of "a day" and implemented accordingly, as shown "or every thirty-day period that an eligible inmate successfully participates in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, the inmate will earn ten days of FSA Time Credits. If the inmate is determined to be at a minimum or low risk for recidivating and can maintain that risk level for the most recent two consecutive risk and needs assessments, that inmate may earn an additional five days of FSA Time Credits per thirty-day period."

## ALL CLASSES AND ALL ACTIVITIES COUNT

According to both the First Step Act of 2018 and the Federal Register notes at implementation (January 2022), all classes and all "full time" jobs within the BOP prison system count for earned time credits. There are certain classes which have been identified as Evidence Based Recidivism Reducing Programs. Classes that do not fall under that category fall under the "catch all" of "other productive activities".

**THE FIRST STEP ACT IS SILENT ON THE NUMBER OF DAYS AN INMATE CAN EARN**

Contrary to some beliefs, the First Step Act of 2018, Public Law 115-391 is silent on a maximum number of days earned.

"(4) TIME CREDITS.— "(A) IN GENERAL.—A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows: "(i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities. "(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities. "(B) AVAILABILITY.—A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed— "(i) prior to the date of enactment of this subchapter; or "(ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a). "(C) APPLICATION OF TIME CREDITS TOWARD PRERELEASE CUSTODY OR SUPERVISED RELEASE.—Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

DocuSign Envelope ID: 5BC4CA3D-CDC9-479A-98F7-D1ABB3B2B008

In addition, Congress has stipulated, and through the Federal Register the BOP has concurred, that First Step Act earned time credits are "stackable" whereas if an inmate worked a full time job, and participated in classes they would earn effectively double credit.

## THE FIRST STEP ACT SPECIFICALLY INCLUDES SUPERVISED RELEASE

While the BOP has suggested to thousands of inmates that First Step Act earned time credits can not take time off supervised release, the above paragraph as well as *Douglas A Dyer v. Michelle Fulgam (E.D. Tennessee 1:21-CV-CLC-CHS) specifically stipulate that a) inmates on home confinement are still in the custody of the Bureau of Prisons. b) that inmates on home confinement, are still eligible to earn First Step Act time credits because they are still in the custody of the Bureau of Prisons. c) A job, while on home confinement is a productive activity and an inmate is earning those credits while working.*

## THE FIRST STEP ACT IS UNAMBIGUOUS IN REGARDS TO SUPERVISED RELEASE

"The issue before the court is whether the Petitioner is entitled to relief for 489 days of unused FSA time credits he accumulated, or whether his petition is moot due to his transfer to supervised release."

"[I]n interpreting a statute a court should always turn first to one cardinal cannon before all others...[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut v. Bank v. Germain, 503 U.S. 249, 253-54 (1992) (noting "judiciary inquiry complete" when statue's language is unambiguous). Here the relevant

statutory provision provides that "[t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reducing programs or productive activities shall be applied toward time in…supervised release". 18 U.S.C. § 3632(d)(4)(C). Therefore, the unambiguous mandatory language of the statute provides that earned time credits may be applied to a supervised release" (Douglas A. Dyer v. Fulgam, 1:21-CV-299-CLC-CHC, Ed Tennessee).

## MR. TENNEBAR HAS EARNED 1,530 DAYS OF "EARNED TIME CREDIT" WHICH EQUATES TO 765 DAYS OFF OF HIS HOME CONFINEMENT AND SUPERVISED RELEASE.

The statute is clear and unambiguous, Mr. Tennebar's First Step Act earned time credits must be applied to his home confinement and then his supervised release (Dyer v. Fulgam) . The First Step Act made it clear that all inmates in the custody of the BOP during the period of eligibility and eligible under the law will receive the credits that they earned. Mr. Tennebar earned 1530 days of earned time credit while in BOP custody during the eligible period which as indicated above and calculated using the laws formula, equates to 765 days off of his home confinement, then supervised release.

| EBRR/PA | START | END | TIME | NET |
|---|---|---|---|---|
| Orderly | 12/15/2018 | 6/15/19 | 210 | 105 |
| RDAP | 9/15/2018 | 6/15/19 | 270 | 135 |
| TDAP | 6/15/2019 | 8/15/19 | 60 | 30 |
| Safety (wrk) | 7/11/2020 | 3/11/22 | 600 | 300 |
| RDAP II | 7/10/20 | 12/8/21 | 150 | 75 |
| TDAP | 3/17/2022 | Current | 120 | 60 |
| Searchpat (wrk) | 6/15/2019 | 8/15/19 | 60 | 30 |

7

| Custom Rubber Corporation | 5/24/2022 | Current | 60 | 30 |
|---|---|---|---|---|
| | | Total | 1530 | 765 |
| | | **Months** | | 25.5 |

## CONCLUSION

It is clear to see that Mr. Tennebar has been passionate about rehabilitation and reducing his own risk of recidivism. He participated in a wide variety of Productive Activities as prescribed by the First Step Act of 2018. Even after he was released from prison into community confinement under the supervision of the Bureau of Prisons, he continued to participate by holding a job (considered a productive activity) during his Home confinement.

In this motion Mr. Tennebar is not asking for the bench to make a decision based on morals, criminal conduct or anything that requires contemplation. Mr. Tennebar has earned these days via the First Step Act, a law passed by Congress and signed by former President Trump, and not a BOP policy that may be open to interpretation. *Mr. Tennebar earned 765 days off of his supervised release* [emphasis added] and simply asks that the court apply those credits to his sentence or compel the BOP to do the same. As stipulated in Dyer v. Fulgam (see above), Mr. Tennebar has earned these credits which weren't applied. Mr. Tennebar is simply asking for what he has earned by investing in himself throughout his prison term, which is exactly what this honorable court hoped he would do.

Respectfully submitted this 11th day of July 2022

DocuSigned by:

*Ryan Tennebar*
C2676BF2C4334E4...

Ryan Tennebar

# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO

RYAN TENNEBAR                        )
    Petitioner                       )
                                        )
    V                                ) CASE NO.: 1:19-cr-00437, 1:17-CR-00176
                                        ) CIVIL ACTION: To Be Assigned
UNITED STATES OF AMERICA             )

## CERTIFICATE OF SERVICE

I, Ryan Tennebar, swear under the penalty of perjury that the foregoing: **HABEAS CORPUS**

**MOTION BY PERSON IN BOP CUSTODY PURSUANT TO 28 U.S.C. § 2241** has been

deposited with the United States Postal Service, postage prepaid and addressed to:

CLERK OF COURT
UNITED STATES DISTRICT COURT
110 E 5th Street
Cincinnati, OH 45202

Respectfully submitted this 11th day of July, 2022

DocuSigned by:

*Ryan Tennebar*
C2676BF2C4334E4...

Ryan Tennebar



PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

UNITED STATES POSTAL SERVICE

PRIORITY MAIL

P
US POSTAGE PAID
$8.95
Origin: 39109
07/07/22
0150680009-55

PRIORITY MAIL 2-DAY®

0 Lb 3.20 Oz
1004

EXPECTED DELIVERY DAY: 07/08/22

C023

SHIP
TO:
100 E 5TH ST
CINCINNATI OH 45202-3905

USPS TRACKING® #

9505 5117 6757 2188 3924 58

FLAT
ONE RATE

TRACK

PS00

■ Expecte
■ Most do
■ USPS Tr
■ Limited i
■ When us
"Insurance do
Domestic Mail
** See Internat

trictions apply).*
l destinations.
ired.
see the
ons of coverage.

Retail

FROM:

Ryan Topucher
8475 Swingdale Drive
Breaksville, OH 44141

TO:

Clerk of Court
United States District Court
100 E. 5th Street
Cincinnati, OH 45202

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.